Good morning. I'd like to reserve three minutes for rebuttal. Michelle A. Russo for Plaintiff Jerry Neufeld. If it may please the Court. I was told by a colleague that I would get laughed out of this courthouse if I tried to argue that regular predictable attendance was not an essential function of Mr. Neufeld's job, and I intend to do just that. First of all, if you take a look at the requirements for Mr. Neufeld's job, he was in the service industry. There are some jobs where attendance is necessary to do work when there is work and is not necessary to do work when there is not work. And being a cashier is one of those jobs where you don't have to show up? No, Your Honor. The issue is regular predictable attendance. You could just come when you want? Your Honor, the issue of whether or not they could come when they want, I'm not saying that that is reasonable in every case, but in some cases that is reasonable. And in this case— At a grocery store, you can just come as a cashier whenever—you can just kind of do flex hours? As long as you get 30 hours in or 40 hours in a week, you can just kind of show up when you want to? Depending on the status of the employer, yes, absolutely, you can. And I'd like to point the Court to excerpts of records, page 540, the deposition of one of the managers. And he states that they did have other employees who took intermittent leave. And he says, I quote, the employee took the days off when they needed to. Yeah, but intermittent leave is an accommodation that the employer makes to its employees that it's required to make. And now we're going to blame the employer because they're allowing— And we're going to say, well, obviously, since you're making an accommodation, you don't need them here all the time. Well, that's only going to discourage WNCO from ever offering anybody intermittent leave in the future if they're going to get beat over the head with it. Your Honor, I would—I see the Court's point. And it could lead to absurdities if it was not for the check and balance of the interactive process. Let me ask this question. These other employees you refer to who were given intermittent leave, were they cashiers? Well, don't spend a lot of time— You know what, Your Honor? I'm not certain that they were a cashier. And do we know whether they had to come up with a doctor's note or some other kind of excuse? Let's talk about doctor's notes and excuses. I'm sure that they did. And I would like to point out that my client provided multiple doctor's notes and excuses. Right. But not on the days for which WNCO said, wait a minute, you don't just get to not show up. And if you don't show up and don't have a doctor's note, then we're going to give you the strike, as provided—as you understood from the very beginning, just like everybody else. Your Honor, that's contrary to what's required at the FEHA. If you look at 2 CCR 11069 sub F, it says, for reasonable accommodations extending beyond one year, employers may ask for medical documents substantiating the need for continual reasonable accommodation on a yearly basis. If Your Honors check the record in this manner, you'll see that my client provided a notice that he needed intermittent leave in January prior to taking the leave, the intermittent leave for which he was fired in March. The FEHA does require that reasonable accommodations that are known to the employer be given. And the FEHA does not require medical certification for each and every absence. Does it prohibit it? Your Honor, I believe it does. The FEHA prohibits any requirement that is of the employer that is beyond that which is required by the FEHA. So FEHA prohibits WNCO for asking for a medical excuse. No, Your Honor. It prohibits WNCO from having a policy that requires a medical certification for each and every absence when the employer is already on notice of a disability and is required to provide that reasonable accommodation under the FEHA. Didn't WNCO, in fact, invite the plaintiff to make that kind of arrangement? In other words, you know, they said they told the employer, you can work out a plan where you don't have to send a note each and every time, right, if you comply with these requirements, and the employee, the plaintiff, never did that, never took advantage of that offer. Your Honor, two things. There was always a requirement that he provide a medical certification for each and every absence. And I'd like to point out to the Court, the absences for which my client was terminated happened in March. He worked and provided medical certifications for absence prior and subsequent to those March absences. I don't know if that matters a whole lot. In other words, you know, their regular employment rules, which apply, as I understand, apply to all employees, says, well, you have to document these absences. They asked the plaintiff several times to document those March absences. He just, you know, didn't pay attention to those notices, right? Your Honor, that's not actually true. And I think that this speaks to an important policy that we need to look at. The fact that my client couldn't get the medical documentation is because he was a low-wage worker who didn't have health insurance. So WNCO's policy, if we were to apply that to everyone, that would require that everyone have health insurance, have access to a doctor, and be able to provide medical certification for each and every absence, even though they have already provided numerous and voluminous documents. Kennedy. Never even told WNCO, well, I can't give you that note because, you know, I don't have health insurance. I don't have a doctor duty. That's not true, Your Honor. He did tell them. He did tell them he was not able to provide it. That is in the record. Can I get back to you on that? He did tell them that he was unable to provide it. And it is in the record that he did inform his manager. Give me the excerpt number. The excerpt for? For when he told the employer, I can't give you a note because I don't have a doctor, or something like that. Your Honor, I don't have that at hand. That would take me a moment to find. Does that mean it's not in the record? I don't have the voluminous record memorized, but I would have to check. How is WNCO to tell the difference between Mr. Neufeld being absent for medical reasons and Mr. Neufeld being absent because he's water skiing? Well, many ways, Your Honor. He has medical certifications that state that he has an intermittent anxiety. So they were on the It's intermittent. Correct. Which means then he can do it whenever he wants? Or whenever he, in his judgment, he's medically disabled? Well, the fee, like I said, yes. Okay. So back to my question. How does WNCO distinguish between water skiing and staying home because he's not feeling well? WNCO distinguishes because they have noticed that he is, that he has an intermittent leave and Isn't he just self-reporting at that point? Yes, Your Honor. He is self-reporting. Okay. And the FEHA allows for that. And he can self-report and WNCO has no ability to verify anything. I'm not saying that WNCO has no ability to verify anything. That's certainly not what I'm claiming because they did verify and he did provide multiple verifications. Right. But he didn't provide verifications for a number of days. That's what WNCO fired him for, was for taking days off without providing medical verification. So what is WNCO supposed to do? Your Honor, he did provide medical verification. For the days for which they fired him? Your Honor, he provided notice and signed and WNCO acknowledged that he needed intermittent leave for his anxiety. But that's the get out of jail free card, you know, in advance, right? Now I'm asking you, how is WNCO supposed to know that on those days he was exercising his intermittent leave for medical reasons and not just taking a day off for personal reasons? Because that's what he told them and they had no reason to believe otherwise. And so the burden now becomes on WNCO to verify this? He doesn't have any obligation other than to tell them I took medical leave yesterday. Your Honor, I do believe he has an obligation and he carried that obligation. He carried the obligation by providing multiple. If he takes Thursday, if he takes today off and comes in on Monday, how does WNCO know that he took it for medical reasons? Because he provided a note back in July that says I'm going to be taking days off for medical reasons? Does he have any obligation to demonstrate to WNCO that he was actually exercising the medical leave that the doctor said that he would probably need? Yes, Your Honor, and I believe that is through the medical certification, which the FEHA in the reg state, you can ask for medical certification once a year. So the regulations themselves. But once a year then becomes a get-out-of-jail-free card. And WNCO has no way of knowing whether the day he took off was for medical reasons. You're telling me now that WNCO has to assume that every day he takes off is done for medical reasons? That's not correct, Your Honor. If he tells them, and I think we can assume there's no reason that the law would assume that people are not honest. If he tells them what? If he tells them that it's related to their disability. They just have to take his word? It's not just his word. If he has substantial medical certification and documentation, which per the regulations. Counsel, we keep running around in the same circle. I don't think you're addressing my question, so. Okay. Well, I think my time's up. Okay. Counsel, we've taken a lot of your time. I am going to afford you time for rebuttal, so I'll give you two minutes for rebuttal. Thank you. You may begin, Counsel. Thank you. Good morning, Your Honors. Christine Elani for WNCO Holdings, Inc. May it please the Court. Plaintiff's entire case depends on, Your Honors, finding that the regular predictable attendance is not an essential function of a grocery store cashier's job because it is not written in the job description. Didn't WNCO act, in this case, like regular predictable attendance was not an essential function? As I understand WNCO's position, the problem was that after Mr. Neufeld was absent, he didn't provide a note. And when I kind of extend WNCO's position and think about it, it seems to me that as long as he kept providing a note, no matter how many days he missed, no matter if it was predictable or intermittent, as long as even several months later he provided a note, WNCO didn't seem to have a problem with that. Given that that seems to be WNCO's position, how can WNCO say that it was essential for this particular plaintiff on this record to have regular and predictable attendance? Well, Your Honor, as the weight of authorities that we cited in our brief have indicated, that if you were to find that an employer's excusing absences that have, you know, had medical documentation supporting them, if you were to hold that that waives the employer's right to argue that regular attendance is an essential function, then it would effectively punish employers from going above and beyond what the law requires. Well, what about this further step that WNCO took, telling the employee, well, if you don't want to provide a note every time you're out, you know, we can make this arrangement, right? Doesn't that also seem to indicate that, you know, they almost offered him flex time? Well, WNCO's statement that if, as it stated in correspondence to Mr. Neufeld, that if he were to present a doctor's note stating the frequency and durations of days that he needed off due to his disability, then it would be able to excuse those without him providing a note every time. Right. It's precisely consistent with what the FEHA regs state. There is a provision in there that states that if an employee is going to need absences on a going-forward basis, then they can proactively provide that certification with that information in it. Mr. Neufeld never did that here, despite even having been notified of that. Counsel for Neufeld says the CCRs prohibited WNCO from asking for anything further than what it received. Correct. What she's citing in the CCR there is not applicable to this sort of situation. The annual certification goes to where a reasonable accommodation is in place, where a doctor has certified it, and it may go on for a year. For example, a modification in job duties or where you've gotten that certification that there is a need for intermittent leave. There was no such certification here. Rather, the opposite. Every certification that Mr. Neufeld submitted stated that he needed to be absent only on specific days due to his disability. In response to my earlier question, you said that if we were to take into account WNCO's willingness to allow Mr. Neufeld's absences with notes, we'd be, in your words, penalizing WNCO, and there's a line of cases that says you shouldn't hold it against an employer when an employer generously tolerates absences. Almost all of those cases involve an employer temporarily accommodating an employee. And in this case, when I read the record, there's no indication that WNCO's willingness to tolerate Mr. Neufeld's post-absence excuse with a note would have ever expired. On this record, it seems to me that a jury could find that for as long as Mr. Neufeld was employed with WNCO for the rest of his career, whenever he missed, as long as he gave a doctor's note, there would be no problem. I didn't see a case that suggested if an employer seemed willing to do that ad infinitum into the future, that that's not something we could consider in deciding whether regular and predictable attendance is an essential function. Is there such a case? Well, in the Sampera case, which this Court decided, the employee had been absent numerous, numerous times for a period of time as well. Isn't there a critical difference between that case and this case? In that case, the nurse was absent for several years, as you point out in your brief. But the employer in that case didn't sit by and say nothing. On the contrary, the employer put the nurse on an improvement plan, gave her verbal warnings, counseled her, expressed unequivocally that these absences were fundamentally inconsistent with doing the job. Here, I didn't see anything in the record that suggests that WNCO ever indicated to anybody in the world that it had a problem with Mr. Neufeld's irregular absence so long as he would just provide a note after the fact. Isn't that an important difference between this and Samper? Well, I think factually it's very different as well, because here, every time that Mr. Neufeld submitted a note excusing his absences, it said very specific days. And every note provided the indication that this was not going to be an ongoing condition. And it's also important to think about the larger context of, while not directly applicable to these facts, but the larger context of the ADA and reasonable accommodation being leave up to a year. Mr. Neufeld had only been employed a year and a half by the time his employment terminated. So by WNCO tolerating the ongoing, unpredictable absences as long as they were excused with medical documentation for a year, that's well within the realm of what would be required anyway. I think if this had been going on for years and years, your argument would make more sense. But on these facts, I don't think it even comes into play. Is there anything in the record on your opponent's point that because the plaintiff's employee didn't have health insurance, and presumably because of that he didn't have a regular doctor, it was difficult for him to get these doctor's notes or maybe expensive, I don't know. But is there anything in the record that addresses that issue? There's not. The appellant did not argue that in the record or did not point that out in the record. And it's actually, you know, it doesn't make sense in the context of the issues that the plaintiff or the absences that the plaintiff is bringing up at issue here are these beginning of March absences. The day after those three days that the plaintiff was absent, the plaintiff went to the doctor and got a doctor's note for other absences, but he did not get a note to certify the absences that had occurred just a couple of days prior to being at the doctor. What do we know about the other accommodations that WNCO is making for other employees? Well, I don't think that is applicable here because as the reasonable accommodation process requires, it's a very fact-specific inquiry for each employee. It might go to the question that Judge Lightman was asking about whether attendance really was critical in WNCO's, I mean, if they're offering very, very well beyond the year and a half that your client was there, then it might say something about how WNCO regarded this. Okay. So what do we know? Well, we know that WNCO takes every employee with the employee's certification from the doctor as to what accommodation or what the employee's restrictions are for the employee's disability and works with the employee as part of the interactive process to determine possible accommodations. If the doctor certifies that the employee might need days off as the accommodation, then WNCO will work with the employee to accommodate that. Without identifying any employee in particular, is there anything in the record that indicates something that WNCO has done for employees that would be more generous than what they offered to Mr. Neufeld? There is nothing in the record with respect to other employees other than Mr. Neufeld. Speaking of what's in the record, is there anything in the record about the size of the store, you know, how many cashiers were required, you know, how many people were trained or, you know, able to do that job, and how much flexibility WNCO had and say, you know, if, well, Neufeld or somebody else was out one day, they could just tell, you know, X, go to the cashier's stand or something like that? Is there anything in the record about those issues, those statistics? There is nothing in the record with respect to those statistics, no, Your Honor. Ms. Lowney, with respect to reasonable accommodations, the district court rejected the idea that intermittent leave would be a reasonable accommodation here. When I reviewed the correspondence between WNCO and Mr. Neufeld, in particular a letter dated June 29, 2012, WNCO writes to Mr. Neufeld and says that to conveniently provide him with the reasonable accommodation of intermittent leave, please have your physician supply the letter. Now, we know the physician never supplied the letter. But on the underlying question, whether intermittent leave could be a reasonable accommodation here, how do you square the notion that intermittent leave isn't a reasonable accommodation with this statement by WNCO suggesting precisely the opposite? Well, it's certainly — it is not a reasonable accommodation, first of all, if the doctor does not state that it is something that the employee needs to accommodate the employee's disability, which is something that never occurred here. But also — The district court's ruling wasn't — didn't have anything to do with the doctor. The district court's ruling was that in this particular position, intermittent leave is not a reasonable accommodation because it would undermine the requirement for regular and predictable attendance. With respect to that rationale, how can that rationale be squared with WNCO's own statement on intermittent leave? Well, I don't think the district court held squarely that intermittent leave is not a reasonable accommodation. It held that intermittent leave that is to the point of compromising regular predictable attendance, such that an employee cannot perform that essential function of the job, is not an effective accommodation at all. Not only is it not reasonable, it's not an accommodation. And you only find that out as you go through the process and you attempt to offer the employee the accommodation that he or she has requested. Your letter to Mr. Neufeld said if you provide us with this doctor note that tells us you need intermittent leave narrative, and as long as you give us a couple hours notice that you're going to be gone, my words now, we're fine with that. That's Excerpt of Record 309. How do you square that with the district court's conclusion that intermittent leave here was not a reasonable accommodation? Because at the point that intermittent leave becomes either indefinite or it is not an accommodation that does not eventually allow the employee to perform the essential functions of their job. So leaves of absence, for example. An employee who's never at work is obviously not performing the essential functions of the job, but a leave of absence can be a reasonable accommodation if it allows the employee to be able to get back to performing the essential functions of the job. So a very similar rationale applies here, whereas intermittent leave for a period of time can be a reasonable accommodation. But at the point where it becomes clear that the employee is not regularly or can perform none of the essential functions of the job because all essential functions require physical attendance, that is not a reasonable accommodation as a matter of law. Thank you. You know, the problem with your argument is, you know, it sounds okay, but none of that is fleshed out in the record or addressed by the district court, is it? All those considerations you mentioned about, you know, when it stops becoming a Well, the district court didn't need to make that determination. And in fact, even the Ninth Circuit in the Samper case, it's not our job to determine at what point the line is drawn. And the district court just looked at the Prima Facie case and the fact that the record showed that the accommodations requested and which Winco attempted to provide were not effective in allowing the plaintiff to perform the essential functions of his position, and therefore, he wasn't a qualified employee and his claims fail. Okay. Thank you. Thank you. Ms. Idar-Russo, I've given you two minutes. Thank you, Your Honor. I wanted to highlight the fact that Winco's position is internally inconsistent. If you look at excerpts of record, page 495, you'll see that in January of 2013, Mr. Winco said that he suffered intermittent anxiety. So he did provide that certification. Next, I want to point to the issue of the interactive process, which we have not talked about. Many of the cases cited by defendant, the employee and the employer engaged in the interactive process. That didn't happen here. The employee's burden at this point is What interactive process was supposed to take place? They had quite a bit of interaction over this. What more were they supposed to do? They had interaction, Your Honor, but they didn't have interactive process. The interactive process is a back-and-forth dialogue working towards solutions. So when counsel states that it became apparent that this leave was not going to, that it was going to last forever, et cetera, et cetera, there's no support for that. And Winco never determined that because they didn't engage in the interactive process. They didn't sit down with the employee and say, hey, this isn't working for us. What's going on? Getting back to the issue of the internal inconsistency with Winco now claiming that this is not a reasonable accommodation, I wanted to point back to the deposition testimony of a Winco manager. Unlike other attendance policies in the cases cited by defendants, Samper, and the airline case, which I'm sorry, it escapes my mind, the Winco attendance policy was flexible. The manager stated that if you look on the excerpt of the record, page 603, they could choose not to award points per the attendance records based on business needs. That is a critical difference with regard to the accommodation that is not present in the other cases that are cited by defendants. The other issue that I wanted to state is that with regard to the functioning of the employer and their business, nobody told Mr. Neufeld, we can't perform our functions as a store if you don't show up. In fact, the record shows that the only difficulty was an increase of lines. It's not a case such as Samper, where she's a NICU nurse, or as Lange versus Estrue, where in Lange the court stated the absence is prevented, or so the employer stated that the absence is prevented the employee from completing essential functions and prevented the employer from adequately serving the public. That's simply not at issue here. Again, I'd just like to close with the fact that the employer is coming before this court now, after having for years conceding that my client was a qualified individual, stating in writing he's qualified under state protection and under the ADA for years. Now they're coming before this court and telling you that he's not qualified. And I don't think that inconsistency can be squared. That's an interesting point. How many years does the record show that he was given this accommodation? Sure. If you take excerpts of record 37 through 38, you'll see that the defendants produced a chart. Just give me a number. Oh, sure. How long? How many years? It was about a year and a half, so March 2012 through August 2013. March 2012, I mean, like that was the first, I'll call it, leave accommodation? Is that what the record shows? Is that when he began working for WNCO? No. On March 19, 2012, was the first absence for which medical documentation was furnished. Okay. And he continued to provide medical documentation when possible through August of 2013. August of 2013, okay. Correct. And when did he start working for WNCO? I believe he started working for WNCO earlier in 2012. So it was fairly shortly after he began that he told them he had a medical problem. Correct. Okay. All right. Thank you, counsel. We thank both counsel for the argument. Thank you. Neufeld v. WNCO Holdings is submitted.
judges: Tashima, Bybee, Leitman